IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEANNA A. MUIR                    :

    v.                            :    Civil Action No. DKC 13-0808

                         :

APPLIED INTEGRATED TECHNOLOGIES,
  INC.                          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case are two motions. First, Plaintiff Leanna A. Muir filed a motion to strike the affidavit of Vicki Redman. (ECF No. 16). Second, Defendant Applied Integrated Technologies, Inc. ("AIT") filed a motion to dismiss or, in the alternative, for summary judgment. (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be denied.

**I. Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

This case centers around Defendant's termination of Plaintiff's employment. Plaintiff, AIT's employee from December 2009 to September 1, 2011, is transgender. Plaintiff's sex was

classified as male at birth and Plaintiff was socialized as a traditional male. Until spring of 2011, Plaintiff presented as a traditional male. Over time, however, Plaintiff determined that the male designation did not conform to her gender identity. In or around February 2011, Plaintiff was diagnosed with gender identity disorder, a conflict between one's birth-assigned sex and one's gender identity. In February 2011, Plaintiff began medical treatment for gender reassignment and has been under the care of medical and mental health professionals consistent with the accepted standards of care for persons with gender identity disorder. In or around spring of 2011, Plaintiff began to present and live as a female. She began cross-gender hormone therapy on June 23, 2011 but discontinued therapy on January 15, 2013 because of a lack of full-time employment. Plaintiff legally changed her name from Jesse Muir to Leanna Muir on January 19, 2012. (ECF No. 1 ¶¶ 10, 12, 14-15, 17, 23-27).

Relevant for this case, Plaintiff was employed by two companies: USIS National Security Division ("USIS") and Defendant, both federal contractors. She was hired by USIS in June 2009 as a Construction Surveillance Technician and was hired by Defendant in December 2009 as a part-time Access Control Manager. As a requirement for both positions, Plaintiff had to hold and maintain a security clearance. (*Id.* ¶¶ 31-32).

When hired by Defendant, Plaintiff was given the company's
employee handbook which states that

> If the Government withdraws an employee's
> security clearance, AIT may find it
> necessary to terminate an employee
> involuntarily. If this occurs, AIT reserves
> the right to decide to reassign the employee
> to work that does not require access to
> sensitive information. In the event that no
> such assignment is available, AIT has no
> other choice than to terminate the employee.

(ECF No. 12-4, at 2). Plaintiff signed a form acknowledging
receipt of the employee handbook on November 9, 2009. (ECF No.
12-2). Plaintiff came to Defendant's employ holding a Top
Secret Clearance, with access to Sensitive Compartmented
Information ("TS/SCI"), which the Defense Intelligence Agency
("DIA") granted in approximately February 2007. (*Id.* ¶ 29).
When she was hired by USIS and Defendant, Plaintiff was
presenting as a male. (*Id.* ¶ 33).

Plaintiff was employed with Defendant at the National
Center for Medical Intelligence ("NCMI") at Fort Detrick,
Maryland. In early March 2011, during the early stages of her
gender transition process, Plaintiff reported to work at Fort
Detrick in her company uniform with painted fingernails. An
employee at Fort Detrick complained; this led to Defendant
calling Plaintiff for a meeting with several AIT managers on
March 16, 2011. At that meeting, Plaintiff informed Defendant
of her treatment and her interest in transitioning from male to

female. Plaintiff told her management that the transition would have no impact on her ability to perform her job. (*Id.* ¶¶ 32, 35-37). Defendant suspended Plaintiff and, according to Plaintiff, told her that the customer needed time to "cool down." (*Id.* ¶ 38).

Defendant conveys a different version of this interaction. As part of its motion for summary judgment, Defendant filed an affidavit of Vicki Redman, Defendant's Human Resources Manager. According to Ms. Redman, Timothy Wolfe, Security Manager for the DIA at Fort Detrick, informed Defendant that in order to maintain her TS/SCI security clearance – a requirement to work at Fort Detrick – Plaintiff must provide a letter from a mental health care practitioner attesting to Plaintiff's fitness to work, and a personal statement from Plaintiff explaining the thought process that led Plaintiff to become transgender. Mr. Wolfe is an employee of DIA, not Defendant. (ECF No. 12-3 ¶ 7). At the March 16, 2011 meeting, Defendant informed Plaintiff of DIA's demands and gave her sixty (60) days to comply. Plaintiff was informed that "pursuant to DIA policy/directive, she could not report to work until the documentation was provided, and that, if the documentation was not provided within this timeframe, the DIA may terminate its subcontract with AIT." (*Id.* ¶ 8).

The Department of Navy Central Adjudication Facility ("DONCAF") was responsible for adjudicating Plaintiff's security clearance. In April of 2011, Plaintiff met with Krystal Williams, a DONCAF security clearance investigator and informed her that she had been diagnosed with gender identity disorder. (ECF No. 17-2 ¶ 2, affidavit of Plaintiff). No further details about the substances of that meeting are provided. On May 9, 2011, Plaintiff sent a letter to DONCAF describing her diagnosis and her intent to transition from male to female. (ECF No. 17-3). On the same day, Plaintiff's therapist sent a letter to DONCAF confirming Plaintiff's diagnosis and the therapy she was undergoing. (ECF No. 17-4). In her affidavit, Ms. Redman - who works for the contractor that employs Plaintiff - makes no mention of these letters. Plaintiff has never received any information from DONCAF that the status of her security clearance has been changed in any way. (*Id.* ¶ 43).

Plaintiff provides a printout from DONCAF's systems concerning Plaintiff. The message provides:

> DONCAF previously responded to an RRU with the following response: "We received your request to recertify the subject's security eligibility determination. However in order to comply with your request please have subject provide a written [statement] regarding his being by a psychologist (circumstances surrounding why, how long, etc.). Also, please include any available documentation from the psychologist himself." To date we have yet to receive a

response.  Please respond within the next 30
days, [no later than] 14 July 2011.

(ECF No. 17-7) ("DONCAF Status Report").[1]  The date of this
message is not stated explicitly, but given the deadline
provided, it appears to have been generated on June 14, 2011.

On or around July 1, 2011, Tim Donnelly, Defendant's
Director of Security, requested a letter from Plaintiff's
therapist regarding her gender identity disorder, treatment, and
ability to work.  (*Id.* ¶ 45).  Plaintiff's therapist responded
in a letter dated July 18, 2011, addressed to Mr. Ellsworth Lew
of AIT, describing Plaintiff's disorder, the prescribed
treatment, and assertingthat the treatment would not affect
Plaintiff's job performance.  (ECF No. 17-6).  On or around July
26, 2011, Defendant came back to Plaintiff, seeking a personal
statement from Plaintiff describing why and for how long she has
been transgender.  (*Id.* ¶ 46).  Plaintiff refused to do so,
feeling it was intrusive and unnecessary given that DONCAF, and
not Defendant, controlled Plaintiff's security clearance.  (*Id.*
¶ 60).  Defendant makes no mention of any request by Mr.
Donnelly for information for AIT purposes; instead, Defendant
maintains that it requested this information from Plaintiff
based on orders from DIA.  According to Defendant, failure to
receive the demanded personal statement resulted in DIA

---

[1] It is unknown what "RRU" is an abbreviation for.

terminating the subcontract with AIT for Plaintiff's position. Ms. Redman maintains that AIT had no role in this decision. (ECF No. 12-3 ¶ 11). Ms. Redman acknowledges that Plaintiff did not have any performance issues and therefore attempted to find her another job for which she was qualified, but no such position existed currently. (*Id.* ¶ 12). On September 6, 2011, Defendant informed Plaintiff that her employment was terminated effective September 1, 2011. (*Id.* ¶¶ 48, 63). The termination notice stated the reason as follows: "[Armed Forces Medical Intelligence Center] informed AIT that documentation requested from you on July 25, 2011, determining continued Part-time employment, has not been received. It is determined that you will no longer be able to support the contract because of the inability to resolve the matter at hand." (ECF No. 12-5).[2] Plaintiff continued to work for USIS until her contract ended in October 2011. (*Id.* ¶ 49). On December 22, 2011, Plaintiff filed a charge of discrimination against AIT with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 48-50).

On March 15, 2013, Plaintiff filed a complaint in this court claiming that Defendant's termination of her employment was sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, "because it

---

[2] Armed Forces Medical Intelligence Center ("AFMIC") was NCMI's former name.

perceived her to be a man who did not conform to traditional gender stereotypes associated with men in society or because [Plaintiff] is transgender and intended to physically transition from male to female." (*Id.* ¶ 62). Plaintiff's complaint includes a second count, claiming that her termination also violated Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-606. (*Id.* ¶¶ 67-69). Defendant filed a motion to dismiss or, in the alternative, for summary judgment on May 20, 2013. (ECF No. 12). Plaintiff opposed the motion on June 20, 2013 (ECF No. 17), to which Defendant replied on July 8, 2013 (ECF No. 18). Plaintiff filed a motion to strike portions of the affidavit of Vicki Redman on June 20, 2013. (ECF No. 16). Defendant opposed the motion on July 8, 2013 (ECF No. 19), to which Plaintiff replied on July 25, 2013 (ECF No. 20).

## II. Motion to Strike

Plaintiff moves to strike portions of Ms. Redman's affidavit, arguing that the statements are outside Ms. Redman's personal knowledge and are inadmissible hearsay. Ms. Redman's affidavit is the primary evidence submitted by Defendant in support of its motion for summary judgment. Thus, to determine what information may be considered in resolving Defendant's motion, this motion to strike must first be addressed.

Plaintiff contends that Rule 56(c)(4) of the Federal Rules of Civil Procedure requires affidavits used to support or oppose a motion for summary judgment to be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Plaintiff further contends that an affidavit that fails to meet this standard may be stricken or disregarded by the court. (ECF No. 16-1, at 1 (*citing Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)).

Plaintiff accurately captures an affidavit's substantive requirements as set out in Rule 56(c)(4), but fails to cite a procedural rule permitting the striking of an affidavit. Rule 12(f) is the only procedural rule addressing motions to strike, and it states that a court may, on its own or on motion made by a party, "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added). Per Rule 7(a), pleadings include the complaint, the answer to a complaint, counterclaim, or crossclaim, and – if permitted by the court – the reply to an answer. Thus, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." *Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D.Ala. 1999) (*quoting* 2 James Moore, et al., *Moore's Federal Practice* § 12.37[2] (3[d] ed. 1999)); *see also MJ Harbor Hotel, LLC v. McCormick & Schmick*

*Rest. Corp.*, 599 F.Supp.2d 612, 623 (D.Md. 2009). Here, Plaintiff seeks to strike portions of Ms. Redman's affidavit, which does not constitute a pleading under Rule 7(a). Plaintiff's motion to strike these items is, therefore, procedurally improper and will be denied.

The proper way for a party to register its objection to an opposing party's motions, memoranda, or affidavits is through the briefs or memoranda that the party submits to the court. *McNair v. Monsanto Co.*, 279 F.Supp.2d 1290, 1298 (M.D.Ga. 2003). "The court will then implicitly, if not explicitly, rule upon [the] objections in its consideration of the motion." *Id.* Plaintiff makes such objections in her opposition, repeating the arguments made in her faulty motion to strike. (*See* ECF No 17, at 13-16). Plaintiff specifically objects to four statements of Ms. Redman:

- In connection with the DIA subcontract at issue, only the DIA could determine whether an individual was cleared TS/SCI national security clearance.

- On or about March 15, 2011, Timothy Wolfe, Security Manager for the DIA at the Fort Detrick worksite, informed AIT that Plaintiff needed to provide certain documentation to maintain her TS/SCI security clearance. He specifically requested the following documentation: (1) a letter from a mental health care practitioner attesting to Plaintiff's fitness to work; and (2) a personal statement from Plaintiff explaining the thought process that lead [sic] Plaintiff

10

>     to the decision to become transgender.
>     Mr. Wolfe is not, and has never been, an
>     employee of AIT.
>
>     - On or about March 16, 2011 . . . [w]e also
>       informed Plaintiff that pursuant to DIA
>       policy/directive, she could not report to
>       work at Fort Detrick until the
>       documentation was provided, and that, if
>       the documentation was not provided within
>       this [60 day] timeframe, the DIA may
>       terminate its subcontract with AIT.
>
>     - After Plaintiff failed to provide a
>       personal statement, the DIA terminated its
>       subcontract with AIT for the Access
>       Control Specialist position at issue at
>       its sole discretion.

(ECF No. 12-3 ¶¶ 6-8, 11).[3] Plaintiff objects to these statements, arguing that Ms. Redman neither sets forth the basis for her knowledge of DIA's authority over Plaintiff's security clearance nor provides any documentation to support such a statement. Plaintiff further contends that Mr. Wolfe's statements and the DIA policy/directive to AIT are inadmissible hearsay and are unsupported by any documentary evidence. Finally, Plaintiff objects to Ms. Redman's statement concerning DIA's decision to terminate the subcontract with Defendant, arguing that Ms. Redman is not a DIA employee and fails to show how she has personal knowledge regarding DIA's reasoning for

---

[3] Defendant contends that those portions of Ms. Redman's affidavit that Plaintiff did not object to in her motion to strike means that they are uncontested. Defendant incorrectly conflates the concepts of admissibility and undisputed fact. The latter does not necessarily follow from the former.

terminating the subcontract nor any documentation supporting her statement.

Defendant, in opposition, contends that Ms. Redman's statement concerning DIA's authority over Plaintiff's security clearance and the DIA's reasons for terminating its subcontract with AIT is based on her personal knowledge as Defendant's Human Resources Manager. Regarding the DIA policy/directive, Defendant submits that it is not hearsay because Ms. Redman's statement is not being offered for the truth or accuracy of DIA's policy, but only that Defendant informed Plaintiff of the policy, regardless of the actual substance. Finally, Defendant argues that Mr. Wolfe's statement is not hearsay because it is not offered for the truth of the matter, but only that Defendant had received requests for two pieces of information. But beyond that, the circumstances of Mr. Wolfe's statement satisfy the "Then-Existing Mental, Emotional, or Physical Condition" exception to the rule against hearsay, as the statements of the third-party - Mr. Wolfe - are relevant to demonstrating Defendant's non-discriminatory intent in its employment practices. Fed.R.Evid. 803(3).

As discussed below, the only issue presently pending is whether DIA terminated Plaintiff's employment at Fort Detrick because she did not cooperate with the DIA's or DONCAF's

investigation.[4]  Only the last of the four statements goes to that central issue.  As to this statement, Ms. Redman's position as AIT's Human Resources Manager made her responsible for terminating Plaintiff's employment.  Thus, her statement that DIA decided to terminate Plaintiff's contract will be accepted as within her personal knowledge and is deemed admissible, to be given such weight as it deserves given any supporting evidence, or lack thereof.

## III. Motion to Dismiss

Defendant moved to dismiss or, in the alternative, for summary judgment.  It is not readily apparent from Defendant's filings whether the motion to dismiss is based on Plaintiff's failure to state a claim or, rather, for lack of subject-matter jurisdiction.  As discussed below, Defendant makes two arguments: (1) that it terminated Plaintiff's employment for a legitimate non-discriminatory reason and Plaintiff cannot show pretext; or (2) because the decision to terminate was based on Plaintiff's failure properly to maintain her security clearance, a decision which is excepted from liability pursuant to the national security exception to Title VII.  42 U.S.C. § 2000e-2(g).  In the original motion, Defendant advances both arguments

---

[4] The parties differ on which agency controlled Plaintiff's security clearance.  Ultimately, the dispute is whether Plaintiff's security clearance status was changed.  Identifying which agency on the Department of Defense's organizational chart made the change is immaterial for purposes of this motion.

as reasons to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim or, alternatively, for summary judgment. In the reply, however, Defendant characterizes the national security exception argument as one of dismissal for lack of subject-matter jurisdiction. The legitimate, non-discriminatory reason argument is characterized as one seeking summary judgment, seemingly accepting that Plaintiff has fulfilled her requirement under Rule 8(a). This latter incarnation of Defendant's arguments will be how they are evaluated for purposes of Defendant's motion to dismiss. *See Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013) ("federal courts are generally without subject-matter jurisdiction to review an agency's security clearance decision.").

**A.    Standard of Review for Motion to Dismiss Pursuant to Rule 12(b)(1)**

Defendant's motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 425, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3[d] ed. 1998)). The Plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins*

*Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

## B. Analysis

Defendant argues that the court lacks subject-matter jurisdiction because the termination of Plaintiff's employment stemmed from her failure to maintain the necessary security clearance. Such decisions are insulated from judicial review by the national security exception to Title VII, which provides:

> [I]t shall not be an unlawful employment practice . . . for an employer to discharge any individual for employment in any position . . . if –
>
> > (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

> (2) such individual has not fulfilled or
> has ceased to fulfill that requirement.

42 U.S.C. § 2000e-2(g). Subsequent case law has established that courts do not have subject-matter jurisdiction over the substance of the Executive branch's decision to grant, deny, or revoke a security clearance. *Dep't of Navy v. Egan*, 484 U.S. 518, 529-530 (1988); *Guillot v. Garrett*, 970 F.2d 1320, 1324 (4th Cir. 1992) ("unless Congress *specifically* has provided otherwise, the courts will not intrude upon the President's authority to grant or deny access to national security information."). The United States Court of Appeals for the Fourth Circuit has extended the reach of the doctrine further, holding that the decision to *investigate* an employee and revoke his security clearance was unreviewable for violations of Title VII. *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996). The Fourth Circuit found that "the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference," *id.*, because the issues that led to the investigation could very well be the same issues that led to the final security clearance decision. "Thus, if permitted to review the initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable." *Id.*

It is undisputed that Plaintiff's position at Fort Detrick required a security clearance. Defendant contends that the evidence on the record shows that "Plaintiff's security clearance was being investigated by the DIA and/or DONCAF, and that further action was required by Plaintiff to maintain her national security clearance." (ECF No. 18 at 7). In support of this assertion, Defendant points to: (1) the DONCAF status report; (2) the email exchange concerning the effects of undergoing various stages of gender reassignment; (3) Plaintiff's May 9, 2011 letter to DONCAF outlining her gender therapy; and (4) the May 31, 2011 email from AIT confirming that Plaintiff's full-time employer's security office was conducting an investigation. According to Defendant, such facts, in and of themselves, trigger the national security exception and necessitate dismissal.

Plaintiff appears to accept that if her termination with DIA was in fact based on DONCAF's decision that her security clearance was no longer valid, her claim stemming from that adverse employment action would end. But Plaintiff contends that the security clearance issue is just a smokescreen to hide the fact that she was terminated by Defendant – under no orders of DIA - because of sex discrimination. Plaintiff submits that her security clearance has never been revoked or downgraded, nor has Defendant presented any evidence to the contrary. Further,

Plaintiff points out that Defendant has provided no documentation from DIA indicating that it was terminating Plaintiff's contract. Plaintiff's theory of the case does not require the court to evaluate the propriety of the security clearance determination or investigation because, according to Plaintiff, her termination was not based on a security clearance determination.

Based on the current evidence, Plaintiff's arguments are more convincing. The national security exception is well-established and when it is triggered, the disposition of a case is simple: dismissal for lack of subject-matter jurisdiction. But Defendant tries to stretch the scope of the exception further than its present boundaries. According to Defendant's theory, if the employer launches a security clearance investigation and the employee is subsequently terminated, the termination is the result of the security clearance investigation and therefore cannot be reviewed. Such logic only works if (1) the job requires a security clearance, and (2) the employee's security clearance is actually revoked or made inactive. No party disputes the first part; Plaintiff vigorously disputes the second part.

To date, Defendant has provided insufficient evidence that the actor with control over Plaintiff's security clearance (DIA or DONCAF) actually placed Plaintiff's clearance in a status

that would prevent her from continuing her work at Fort Detrick. Multiple appellate courts have found that "courts have jurisdiction to decide claims that 'do [] not necessarily require consideration of the merits of a security clearance decision,' as long as they remain vigilant not to 'question the motivation behind the decision to deny [the plaintiff's] security clearance.'" *Zeinali v. Raytheon Co.*, 636 F.3d 544, 550 (9th Cir. 2011) (*quoting Makky v. Chertoff*, 541 F.3d 205, 213 (3[d] Cir. 2008)) (alterations in original); *see also Romero v. Dep't of Def.*, 527 F.3d 1324, 1328 (Fed. Cir. 2008) (reading *Egan* to hold that the Merit Systems Protection Board may determine – and a court may review – "whether a security clearance was denied [and] whether the security clearance was a requirement of the appellant's position."). On a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings. And while the burden rests with the Plaintiff to demonstrate subject-matter jurisdiction, the court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

Here, subject-matter jurisdiction turns on whether the DIA terminated Plaintiff's contract because she no longer held the security clearance required for her position. Defendant submits that DIA revoked Plaintiff's security clearance and terminated

her contract because she would not provide the demanded personal statement. According to Defendant, it acts as an intermediary between DIA and Plaintiff; any demands for information Defendant gave to Plaintiff were DIA's demands, not Defendant's. Defendant relies on Ms. Redman's affidavit and Plaintiff's termination notice to support this point.

Plaintiff, on the other hand, disputes Defendant's entire story. She acknowledges that DONCAF was investigating her clearance but insists she cooperated with them, providing the May 2011 letters to DONCAF from her and her therapist. Plaintiff points to the fact that Defendant has produced no correspondence between DIA/DONCAF and Defendant regarding Plaintiff's security clearance investigation and its supposed deficiencies, nor any documents evincing DIA's decision to terminate Plaintiff's contract or that Plaintiff's security clearance had been downgraded. According to Plaintiff, Defendant requested the documents in July 2011 to satisfy their prurient interest in her gender reassignment. The current record is insufficient to determine, as a matter of law, that the national security exception to Title VII has been triggered, thus eliminating subject-matter jurisdiction on this aspect of

Plaintiff's case. Therefore, the case may proceed to consider Defendant's motion for summary judgment.[5]

## IV. Motion for Summary Judgment

Plaintiff has submitted an affidavit pursuant to Rule 56(d) indicating that Defendant's motion for summary judgment is premature and that discovery is necessary before she can adequately respond to the motion. (ECF No. 17-1).

As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the motion." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986). The nonmovant must make it clear to the court that more discovery is needed pursuant to Rule 56(d), which provides that "[i]f a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion." "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[(d)] in good faith

---

[5] Even if Plaintiff's DIA contract was terminated because of her failure to maintain a security clearance, this would not necessitate dismissal of the entire case, as Plaintiff remained Defendant's employee eligible to work on other contracts that did not require a security clearance. Defendant submits that it searched for then-available positions and found none for which Plaintiff was qualified, which led to Plaintiff's termination. (ECF No. 12-3 ¶ 12). That purported search – and subsequent termination – is independent of a decision on Plaintiff's security clearance and outside the national security exception, thus presenting a potential Title VII claim.

and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks omitted). Rule 56(d) allows a court to deny summary judgment or delay ruling on the motion until discovery is conducted if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

Notably, requests made pursuant to Rule 56(d) "'cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Balt.,* 807 F.Supp.2d 331, 342 (D.Md. 2011) (*quoting Young v. UPS,* No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)). Courts interpreting Rule 56(d) have consistently held that a nonmovant's request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted). Put simply, Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell,* 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd,* 50 F.App'x 179 (4th Cir. 2002); *see also Wright v. Eastman Kodak Co.,* 550 F.Supp.2d 371, 382 (W.D.N.Y. 2008) ("While a Rule 56[(d)] discovery request may be granted to allow a plaintiff to 'fill material evidentiary gaps,' it may

not be premised solely on speculation as to evidence which might be discovered."), *aff'd*, 328 F.App'x 738 (2[d] Cir. 2009).

Here, it is undisputed that Defendant moved for summary judgment before any discovery. Plaintiff submitted an affidavit of Laura J. Brown, one of her attorneys. Ms. Brown submits that she needs to discover: (1) documents reflecting communications between DIA and Defendant concerning Plaintiff's employment and eventual termination, her security clearance, and the DIA policy/directive that allegedly prohibited her from returning to work after March 16, 2011; (2) testimony of AIT employees who communicated with DIA concerning DIA's alleged demand of information from Plaintiff and those employees who attended the March 16, 2011 meeting with Plaintiff; (3) documents and testimony regarding AIT's efforts to find Plaintiff a substitute position following termination of her contract with DIA; and (4) documents and testimony from DONCAF and DIA employees who have knowledge of Plaintiff's security clearance investigation, the alleged documentation DIA demanded, and the contract with AIT on which Plaintiff worked. (ECF No. 17-2 ¶ 5).

Plaintiff's affidavit identifies discovery needs relevant to the central issue of this case: whether Defendant was terminated because of a failure to maintain a security clearance, or whether this reason was merely a pretext by Defendant, hiding the real reason: impermissible discrimination

on the basis of Plaintiff's sex. Additionally, even if Plaintiff's employment with DIA was terminated on DIA's accord, there would still be an issue of whether Defendant's subsequent search for a replacement position was purposefully less thorough because of Plaintiff's transgender status. Therefore, Defendant's motion for summary judgment is premature and will be denied.

## V.  Conclusion

For the foregoing reasons, the motion to strike filed by Plaintiff will be denied. The motion to dismiss or, in the alternative, for summary judgment filed by Defendant will be denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
